IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PRISON LEGAL NEWS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 1:07-CV-2618-CAP |
| | ) | |
| FULTON COUNTY, GA and | ) | |
| SHERIFF MYRON FREEMAN, | ) | |
| Individually and in his official | ) | |
| Capacity as Fulton County Sheriff | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANTS FULTON COUNTY AND SHERIFF MYRON FREEMAN'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COME NOW Defendants Fulton County and Sheriff Myron Freeman (collectively "Defendants") in the above-styled action, and file this Response in Opposition to Plaintiff's Motion for Partial Summary Judgment.

### I.   INTRODUCTION AND BACKGROUND

Plaintiff moves this Court for an entry of Partial Summary Judgment as to its claim of liability against Sheriff's Freeman in his individual capacity. As discussed fully below, because Sheriff Freeman is entitled to qualified immunity on both Plaintiff's First and Fourteenth Amendment claims, the Court should deny Plaintiff's motion as a matter of law.

For a full discussion of relevant background facts, Defendants incorporates their Statement of Facts detailed in their Brief in Support of their Motion for Summary Judgment, along with their related filings, filed on September 2, 2008.

## II.  ARGUMENT AND CITATION OF AUTHORITY

### A.  STANDARD OF REVIEW.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party moving for summary judgment has the burden of establishing the absence of the existence of an element essential to the nonmoving party's case.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The substantive law will identify which facts are material, and the court must evaluate the evidence presented by the substantive evidentiary burden.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 254 (1986).

**B.   PLAINTIFF'S CLAIMS AGAINST SHERIFF FREEMAN ARE BARRED BY QUALIFIED IMMUNITY.[1]**

"The defense [of qualified immunity] embodies an 'objective reasonableness' standard, giving a government agent the benefit of the doubt unless his actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly violated the law would have committed them."   <u>GJR Investments, Inc. v. County of Escambia, Fla.</u>, 132 F.3d 1359, 1366 (11th Cir. 1998).   "Qualified immunity thus represents the rule, rather than the exception: 'Because qualified immunity shields government actors in all but

---

[1] Contrary to Plaintiff's argument, collateral estoppel does not apply to bar qualified immunity to Sheriff Freeman on Plaintiff's First and Fourteenth Amendment claims.   "To claim the benefit of collateral estoppel the party relying on the doctrine must show that: **(1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding."** <u>Pleming v. Universal-Rundle Corp.</u>, 142 F.3d 1354, 1359 (11th Cir. 1998) (emphasis added).   Sheriff Freeman was never a party to an action involving a either a *publisher's* First Amendment right to send inmates' publications or a *publisher's* Fourteenth Amendment right to receive notification of rejected publications.   Thus, the issues at stake in this proceeding are different to any other prior proceedings.   Further, while the constitutionality of the 2002 mail policy was previously conclusively litigated, the question of whether Sheriff Freeman, in his individual capacity, could maintain a defense of qualified immunity was never decided.   As Sheriff Freeman has not, to date, had a full and fair opportunity to litigate whether he is entitled to qualified immunity on Plaintiff's First and Fourteenth Amendment claims, the doctrine of collateral estoppel does not apply to the instant action.

exceptional cases, courts should think long and hard before stripping defendants of immunity.'" Id., (quoting Lassiter v. Alabama A&M Univ. Bd of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994)).

A court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Conn v. Gabbert, 526 U.S. 286 (1999); see Sacramento v. Lewis, 523 U.S. 833 (1998) (if the court determines that the Plaintiff has not alleged a deprivation of a constitutional right, then the inquiry is over). In order for a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." Lowe v. Aldridge, 958 F.2d 1565, 1570 (11th Cir. 1992) (quoting Anderson Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Therefore, for Plaintiff to defeat Sheriff Freeman's request for dismissal on qualified immunity grounds, it must show that the right it is claiming was "clear, factually-defined, [and] well-recognized at the time of the defendants' conduct". Dartland v. Metropolitan Dade County, 866

F.2d 1321, 3122 (11th Cir. 1989).   Where reasonable officials could differ as to the lawfulness of Sheriff Freeman's actions, he is entitled to qualified immunity, as the law could not be clearly established under those circumstances.   <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1231 (11th Cir. 2004).

Further, the public official must show that he was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred to receive qualified immunity. <u>Durruthy v. Pastor</u>, 351 F.3d 1080, 1087 (11th Cir. 2003) (citing <u>Lee v. Ferraro</u>, 284 F.3d at 1188, 1194 (11th Cir. 2002)).

To determine whether an official was engaged in a discretionary function, the court considers whether the acts the official undertook "are of a type that fell within the employee's job responsibilities."   <u>Holloman v. Hartland</u>, 370 F. 3d 1252, 1265 (11th Cir. 2004); <u>see</u> <u>also</u> <u>Jordan v. Doe</u>, 38 F.3d 1559 (11th Cir. 1996).   In the instant case, there can be no dispute that one of Sheriff Freeman's primary functions as an elected government official was to run the Fulton County Jail, including the Jail mailroom, and his actions regarding the mailroom were thus discretionary.

"Once it is established that the defendant was acting within [his or] her discretionary authority, 'the burden shifts

to the plaintiff to show that qualified immunity is not appropriate.'" <u>Durruthy</u>, 351 F.3d at 1087. Thus, the next inquiry is to determine whether Sheriff Freeman violated Plaintiff's First and Fourteenth Amendment rights and, if so, whether the rights so violated were clearly established.

1. **<u>Sheriff Freeman is Entitled to Qualified Immunity on Plaintiff's First Amendment Claim.</u>**

The circumstances of this case require a close analysis of the qualified immunity question as it pertains to Plaintiff's First Amendment claim. Defendants have acknowledged that the 2002 mail policy banning receipt of magazines was unconstitutional because the policy, as written, violated Plaintiff's free speech rights. <u>See</u> Defendants' Brief In Support of Their Motion for Summary Judgment, at pp. 23. However, despite the existence of the 2002 old mail policy, evidence reveals that the practice in the Jail mailroom effectively rescinded the 2002 mail policy and replaced it with a constitutional practice. (Hester Depo., 10,21; Thomas Depo., 13-14, 45-46; Banner Depo., 21, 22; Simmons Depo. 10-11). Inmates were allowed to receive their Prison Legal News subscriptions; however, magazines were automatically rejected if it did not come directly from the publisher. (Banner Depo., pp. 21-22, Thomas Depo., pp. 13-14, 24-25, 45-46; Burkett Depo., pp.

8; Hester Depo., pp. 10, 14, 21).

After Plaintiff demonstrates that its rights were clearly established at the time of the alleged violation, it must show that a reasonable official, having the facts that Sheriff Freeman possessed, would have understood that his actions violated clearly established law. Saucier v. Katz, 533 U.S. 194, 201 (2001); Siegert v. Gilley, 500 U.S. 226, 232 (1991). This is a purely legal question. Id.

While Plaintiff may show that it had the right to have its magazine distributed to inmates, it cannot show that reasonable sheriffs, having the facts Sheriff Freeman possessed, would have understood that the actions Sheriff Freeman took violated clearly established law. As a reasonable official, Sheriff Freeman assumed all of the Jail's policies were constitutional when he took office in 2005, more than two years after the Court found the 2002 mail policy unconstitutional. See, e.g., Tindal v. Montgomery County Com'n, 32 F.3d 1535 (11th Cir. 1994) (holding that while former sheriff was not entitled to qualified immunity from plaintiff's First Amendment retaliatory discharge claim because he took part in violation, current sheriff was qualifiedly immune from plaintiff's First Amendment claim absent evidence he took part in constitutional violation). Further,

Sheriff Freeman assumed that the Sheriff's Office CALEA accreditation demonstrated his agency's policies and directives complied with applicable federal and state laws. In addition, the Jail was under the Harper Consent Order, and Sheriff Freeman legitimately assumed that the Consent Order covered any and all the problems with the Jail. (See Freeman Aff., ¶¶ 12-13).

Sheriff Freeman reasonably and in good faith signed an order in January 2005 adopting the policies and procedures of the Sheriff's Office in effect as of January 2005. (Freeman Depo., pp. 8-9, Exhibit 1). Indeed, as Sheriff, he is obligated to follow court orders, and to act in a constitutional manner at all times. (Freeman Depo., pp. 20). Thus, when Sheriff Freeman learned that the policy was unconstitutional, he directed his staff to review and correct the policy. (Freeman Depo., pp. 18-20, 26, 26, 49-50). As the head of an agency that employs over thirteen hundred employees, charged with managing a Jail with a population exceeding fifteen hundred inmates, serving process, as well as generally enforcing laws in Fulton County, Sheriff Freeman trusts his staff to carry out his directives. (Freeman Dep., pp. 9-10, 49-50; Freeman Aff., ¶ 2). As a result of the policy's review process, Sheriff Freeman signed a new mail policy in December 2007. [Doc. 11, Exhibit 1]. Thus, having

8

the facts that Sheriff Freeman possessed, it cannot be stated other reasonable sheriffs in Sheriff Freeman's position would have understood that the actions Sheriff Freeman took violated clearly established law.  For this reason, Sheriff Freeman is entitled to qualified immunity on Plaintiff's First Amendment claim.

**2.  Sheriff Freeman is Entitled to Qualified Immunity on Plaintiff's Fourteenth Amendment Claim.**

Sheriff Freemen is entitled to qualified immunity regarding Plaintiff's Fourteenth Amendment notice claim.  Plaintiff incorrectly argues that Sheriff Freeman's policies violated its Fourteenth Amendment rights because Plaintiff never received official notice that its publications were denied.

First, the 2002 mail policy contemplates notice to a publisher.  Section V. A. 9 of the 2002 Jail Policy No. 3000-01 specifically stated that "[i]f an inmate's mail is censored or rejected, the inmate and/or sender shall be notified of the reason(s) for the action.  Inmates shall have the opportunity to appeal such decisions by submitting their appeal to the Programs Section."  See Verified Complaint, Exhibit A.  Further, the practice in the Jail mailroom was to send notice of the mail rejection to *both* the inmate and sender.  (Simmons Depo., pp.

9

15-16; Thomas Depo., pp. 29).   A copy of the rejection notices were also retained at the Jail, and were used as a daily log of all rejected mail at the Jail. (Burkett Depo., pp. 10; Thomas Depo., pp. 28).   Mailroom staff never destroyed or retained rejected mail at the Jail.   (Thomas Depo., pp. 28).   It is curious that of the over three thousand (3,000) mail rejection notices completed by Jail mailroom staff, none were ever addressed to Plaintiff.   (See Defendants' Motion for Summary Judgment, Exhibit D, ¶ 5).   Absence of notice to Plaintiff suggests that Plaintiff's publications were indeed received by Fulton County inmates.

Second, even if this Court finds that Sheriff Freeman never notified Plaintiff that its magazines were rejected at the Jail, to date, the Eleventh Circuit has not specifically required notice of rejected publications to a sender.   The Daker decision Plaintiff so closely relies on specifically holds that an *inmate* possesses a Fourteenth Amendment right to receive notice of a rejected publication, as well as a reasonable opportunity to challenge the initial mail rejection decision.   Daker v. Barret, No. 1:00-CV-1065-RWS, at 18-19 (July 22, 2002).   That decision never discussed a *publisher or distributor's* Fourteenth Amendment due process rights.   Further, the additional cases

10

that Plaintiff relies on to advance its Fourteenth Amendment notice argument are all from other jurisdictions, and are not the established law in the Eleventh Circuit.

Consequently, as a matter of law, Plaintiff cannot establish that its Fourteenth Amendment right to receive notice of a rejected publication was clearly established in the Eleventh Circuit.  For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right."  Lowe, 958 F.2d at 1570.  As Plaintiff cannot show that the Fourteenth Amendment right it is claiming was "clear, factually-defined, [and] well-recognized at the time of the defendants' conduct," and where reasonable officials could differ as to the lawfulness of Sheriff Freeman's actions in the Eleventh Circuit, Sheriff Freeman is entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim. See Dartland, 866 F.2d at 1322; Kingsland, 382 F.3d at 1231.

Given the facts, this Court should deny Plaintiff's motion for partial summary judgment because Sheriff Freeman is entitled to the defense of qualified immunity as to Plaintiff's First and Fourteenth Amendment claims.[2]

---

[2] Further, contrary to Plaintiff's assertions, the record is devoid of

### III. CONCLUSION

For the foregoing reasons, Defendant Sheriff Freeman respectfully requests that this Court deny Plaintiff's partial motion for summary judgment in its entirety.

Respectfully submitted this 22nd day of September, 2008.

OFFICE OF THE FULTON COUNTY ATTORNEY

Rolesia Butler Dancy
Georgia Bar No. 099928

**_/s/ Nwakaego Okparaeke_**
Nwakaego I. Okparaeke
Georgia Bar No. 141449
nwakaego.okparaeke@fultoncountyga.gov

OFFICE OF THE FULTON COUNTY ATTORNEY
141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246
(404) 730-6324 (Facsimile)

---

evidence which legitimately form the basis of an inference measuring the extent of Plaintiff's damages. See Carey v. Piphus, 435 U.S. 247, 255 (1978) ("Damages are available under [§ 1983] for actions 'found ... to have been violative of ... constitutional rights and to have caused compensable injury....'").

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| PRISON LEGAL NEWS, | ) | |
| | ) | |
|     Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 1:07-CV-2618-CAP |
| | ) | |
| FULTON COUNTY, GA and | ) | |
| SHERIFF MYRON FREEMAN, | ) | |
| Individually and in his official | ) | |
| Capacity as Fulton County Sheriff | ) | |
| | ) | |
|     Defendants. | ) | |
| _____ | ) | |

**CERTIFICATE OF FONT TYPE, SIZE AND SERVICE OF DISCOVERY**

THIS IS TO CERTIFY that on this day, I presented this document in Courier New, 12 point type in accordance with L.R. 5.1(C), and that I electronically filed the document with the Clerk of Court using the CM/ECF system.

This 22nd day of September, 2008.

Respectfully submitted,

*/s/ Nwakaego Okparaeke*
Nwakaego I. Okparaeke
Georgia Bar No. 141449
nwakaego.okparaeke@fultoncountyga.gov